cide. From appellant's testimony on the subject we quote:

"On the day the shooting took place, at the noon hour, I had a conversation with my wife wherein she told me of a conversation with her father and said that he began the same old trouble, that is, that I was a whoremonger and running out and wasn't fit to be her husband; that he asked her what she was going to do about it (meaning of course I was running out and wasn't true to her and that I was a whoremonger and that she was a damn fool and no better than myself), and that if she didn't do something, with her out of the way he could. I did not see the deceased at any time after she told me that until I killed him. I went over there because I wanted him to give me a line on what he intended to do, whether he intended to keep on nagging after me or what he intended to do. I armed myself before I went over there, and my object in doing that was to have him state what he intended to do, and I wanted to have this gun along in case he attacked me. He had threatened to harm me so often before. Oh, yes, sir; he had threatened me before. When I went down there I drove my car right in front of his house and got out and walked back to him, or near him, and I said, 'Now, I want you to apologize or explain immediately to me whether you are going to lay off of me or what,' and he turned from where he was and started back to me, having not yet said a word, but puffed up and coming like he intended to pick me up. I didn't know what he was going to do. He was coming at me in a very unfriendly manner; at least, I thought so. At the time he turned and started at me he had never made no effort to apologize to me. He appeared to be unfriendly. When he started at me all puffed up and red in the face, I began shooting at him. I said, 'You old son of a bitch.' I pulled out the gun and began pulling the trigger as fast as I could. I pulled the gun out and went to shooting. * * * When I went over to his house with that gun, I asked him for an apology, and he turned and puffed up and started towards me. Not a word had he said, and when he did that I said, 'You old son of a bitch,' and worked the trigger as fast as I could. I did not empty the gun and reload it. I had more shells; I had a whole box full. I had not made up my mind to kill the old gentleman when I went over there, but I was going to settle things unless I could attend to my business."

Appellant testified that after the conversation with his wife mentioned he bought a pistol, and on the way to buy the pistol he passed the home of the deceased, but did not see him.

Five shots were fired, one of them striking the watch which the deceased was wearing, the other striking him in the shoulder blade, coming out near the nipple.

Eyewitnesses for the state testified that appellant approached the deceased, cursed him, and called him a son of a bitch and fired three shots, that the deceased asked appellant not to kill him, and that the other two shots were afterwards fired. The pistol

was purchased about half an hour before the homicide.

Without commenting upon the evidence, we express the opinion that it is not such as to warrant the reversal of the judgment of the judge of the district court in refusing bail.

The judgment is affirmed.

On Motion for Rehearing.

LATTIMORE, J. Appellant insists that the evidence is insufficient to justify our conclusion that upon a fair presentation thereof and a fair trial said facts would warrant a capital conviction. We have again gone over the testimony and find ourselves confirmed in our conclusion that bail should be refused. Deceased was a man 59 or 60 years of age, a cripple, and appears to have been deliberately assaulted by appellant on the day of the killing. About 20 minutes before the shooting appellant bought a pistol, for which he gave a check, and the man from whom same was purchased said he saw nothing whatever wrong with appellant at the time. The claim of demonstration on the part of deceased at the immediate scene of the killing appears scarcely to amount to anything. An eyewitness testified that when appellant approached deceased he called him a son of a bitch and fired the pistol at him three times, and that deceased asked him not to shoot, and then turned to run, and while running appellant shot him in the back and killed him. This is a sufficient statement of the facts. Apparently appellant's only claim was that deceased, his aged father-in-law, had been trying to convince appellant's wife that he was running around after other women. We do not believe the refusal of bail by the court below should be adversely reviewed by us.

The motion for rehearing will be overruled.

---

## SLOCOVICH v. STATE. (No. 6662.)

(Court of Criminal Appeals of Texas. Feb. 15, 1922.)

Criminal law ⬤⟿15—Law repealed with no saving clause abates pending prosecution.

Since Acts 37th Leg. [1921] 1st Called Sess., c. 61, in amending Acts 36th Leg. [1919] 2d Called Sess., c. 78, § 1, omitted the offense of unlawfully possessing equipment for the manufacture of intoxicating liquor and contained no saving clause under which prosecutions for offenses committed prior to the amendment may be maintained, the effect of the repeal was to abate pending prosecutions, in view of the imperative provision of Pen. Code 1911, art. 16.

Appeal from District Court, Bell County; M. B. Blair, Judge.

A. Slocovich was convicted of violating the liquor law, and he appeals. Reversed and dismissed.

R. G. Storey, Asst. Atty. Gen., for the State.

MORROW, P. J. Conviction is for the unlawful possession of equipment for the manufacture of intoxicating liquor.

This offense was denounced by section 1, c. 78, of the Acts 36th Leg. 2d Called Sess. That section of the act was amended by 37th Leg. 1st Called Sess. c. 61. In the amendment this offense was omitted. There is no saving clause under which prosecutions for offenses committed prior to the amendment may be maintained.

Article 16 of the Penal Code is imperative. to the effect that the repeal of the law abates pending prosecutions. In several instances in cases of conviction under this law, we have found it necessary to reverse the judgment and order dismissal. That result must attend in this one. Cox v. State (Tex. Cr. App.) 234 S. W. 531.